O

Paul J. Loh (Bar No. 160541)
paulloh@willenken.com
W. Scott Norton (Bar No. 122361)
scottnorton@willenken.com
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

Attorneys for Plaintiffs
TOPWAY APPLIANCE CO., LTD. and
DIANA YU

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| TOPWAY APPLIANCE CO., LTD., a China corporation, and DIANA YU, an individual, | Case No.:  EDCV07-00588 SGL (OPx) |
| Plaintiffs, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| THE ANT COMMANDOS, INC., a California Corporation, RAYMOND YOW, an individual, HONG LIP YOW, an individual, and Does 1-10, inclusive, | |
| Defendants. | |
| And Related Cross-Actions | |

## I.      FINDINGS OF FACT

### A.      Background Facts

1.      On March 18, 2008 and April 17, 2008, the Court held a trial on the Ninth and Tenth Causes of Action in Plaintiffs' First Amended Complaint.  Said trial was combined with an evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction pursuant to Fed. R. Civ. P. 65(a)(2).

2.      The Court heard the testimony of Plaintiff Diana Yu, who testified on her own behalf and on behalf of Topway.

3.      The Court heard the testimony of Defendants Hong Lip Yow and Raymond Yow, who testified on their own behalf and on behalf of TAC.

4.      The Court received and admitted into evidence Joint Exhibits 1 through 44, 55 through 60, and 100.

5.      Plaintiff Topway Electrical Appliance Co., LTD  is a corporation organized under the laws of China with its principal place of business in Shenzhen, China.

6.      Plaintiff Diana Yu, aka Yan Yu , is a Chinese national residing in Shenzhen, China.

7.      Steven Tan, aka Tan Lai Suo, is and has been an owner of Topway since at least 1996.  3/18/08 Transcript, p. 10, line 12-15.

8.      Defendant Hong Lip Yow ("Lip Yow") is an individual residing in California.

9.      Defendant Raymond Yow is an individual residing in California.

10.      Defendant The Ant Commandos, Inc. is a corporation organized under laws of California with its principal place of business in Chino, California.

11.      TAC was duly incorporated in California on March 10, 2006.  *See* Exh. 1.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**B.**   <u>**Plaintiffs' Ninth and Tenth Causes of Action**</u>

12.   Plaintiffs' Ninth Cause of Action challenges the validity of TAC's June 25, 2007 Action by Majority Written Consent of Shareholders of The Ant Commandos, Inc. (hereinafter the "June 25, 2007 Action") (*see* Exh. 17 at p. 4), whereby Raymond Yow and Lip Yow voted to purportedly remove Diana Yu from TAC's Board.   Plaintiffs contend that they are shareholders of TAC and therefore seek a declaration that the June 25, 2007 Action by which Yu was voted off of the Board is fraudulent and illegal because Plaintiffs, as shareholders, were not given proper notice of said vote or an opportunity to vote.

13.   By their Tenth Cause of Action, Plaintiffs seek a declaration that (a) Topway and Yu are combined 50% shareholders of TAC; (b) Yu and Tan are directors of TAC; and (c) any vote terminating Yu or Tan as directors of TAC which was taken by shareholders that did not include Topway or Yu is illegal, null and void.

14.   Plaintiffs filed this action (initially in California state court) on April 20, 2007.   Plaintiff Yu testified that by no later than March 19, 2007, after several failed attempts to conduct shareholder inspections of TAC's books and records, Topway and Yu came to the conclusion that Defendants would not, and will not, honor their shareholder rights.  3/18/08 Transcript, p. 63, line 23 to p. 64, line 6.

**C.**   <u>**Formation and Ownership of TAC**</u>

15.   In late 2005 or early 2006, Lip Yow approached Diana Yu and Steven Tan with a business proposition for Topway.   Lip Yow proposed forming a new American company with Topway to sell guitar gaming consoles in the United States that are compatible with the highly popular "Guitar Hero" game.  Lip Yow's proposal contemplated that 50% of the newly formed company would be owned by the Yow brothers, and the other 50% would be owned by Topway (or designees thereof). 4/17/08 Transcript, p. 9, line 9 to p. 11, line 1.

16.     In early 2006, Diana Yu and Steven Tan, acting on behalf of Topway, agreed to Lip Yow's business proposal.  The parties' agreement led to the formation of TAC.   3/18/08 Transcript, p. 23, line 23 to p. 25, line 10.

17.     Although the agreement was not codified in a formal contract or otherwise reduced to writing, the parties do not dispute that they entered into a valid and enforceable oral agreement with respect to the formation of TAC.  The parties do dispute, however, certain specific items of consideration that each side was obligated to provide in return for their respective 50% shares in the company.

18.     Defendants never delivered any TAC share certificates to Topway or Yu.

**D.     Opposing Testimony Regarding Consideration Required for 50% Interest**

19.     The Court heard testimony from Diana Yu describing the terms of the parties' agreement as understood by her and Topway.  Specifically, according to Yu, Topway promised to:  (a) use TAC as Topway's exclusive U.S. distributor for guitar gaming consoles and accessories manufactured by Topway that were compatible with "Guitar Hero"; (b) manufacture guitar gaming consoles and accessories that are compatible with "Guitar Hero" for sale in the United States by TAC; (c) provide TAC with its advice, expertise and contacts in the gaming industry; and (d) provide capital investment for TAC in the form of a free shipment of goods to be selected by Lip Yow.  *See* 3/18/08 Transcript, p. 20, line 3 to page 21, line 25.

20.     Yu further testified that, in exchange for the aforementioned consideration, Lip Yow (on behalf of himself and Raymond Yow) promised that:  (a) Topway (or is designees) would own 50% of TAC; (b) Tan and Yu would serve on TAC's Board; and (c) with respect to guitar gaming consoles and accessories that were compatible with "Guitar Hero", TAC promised to sell in the United States only those which were manufactured by Topway.  *See* 3/18/08 Transcript, p. 22, line 1 through 21.

21.     Raymond Yow admitted he did not have personal knowledge of the terms of the parties' agreement, nor the negotiations therefor.  Lip Yow, however, claimed he had such personal knowledge.

22.     Lip Yow's testimony largely corroborated Yu's in terms of the items of consideration that the parties agreed upon.  The only material difference is that Lip Yow contended (a) the Yow brothers promised to invest a monetary sum of $50,000 for their 50% interest, and (b) Topway agreed (but failed) to match the Yow brothers' investment with a $50,000 monetary payment for the other 50% interest.  4/17/08 Transcript, p. 11, line 2 to 5.   It appears that Lip Yow further contends that he promised to make only Yu a director of TAC, not Tan.

23.     Although he denies that he selected the products, Lip Yow does not deny that Topway contributed – and TAC received – the initial shipment of goods in April 2006 which Topway contends was given for free in consideration for its 50% interest.  4/17/08 Transcript, p. 11, line 18 to 19.

24.     Yu denies that the parties ever discussed or agreed to make monetary payment – of $50,000 or of any sum – in exchange for shares.  With respect to the Yow brothers' purported capital investment in the form of a $50,000 payment, Yu testified she understood that was a loan the Yows made to TAC.  3/18/08 Transcript, p. 85, line 1 to 15; p. 102, line 8 to 18.

**E.     <u>Plaintiffs' Contention That  They Were Obligated to Ship Goods, As Opposed to Making A Monetary Investment, In Consideration for 50% Ownership Interest Finds Ample Support in the Evidence</u>**

25.     Although the parties offer contradictory testimony regarding what consideration they agreed to provide in exchange for their respective 50% interest in TAC, the Court finds that Plaintiffs' account of the facts on this issue is credible, and that Defendants' version lacks credibility and was fabricated in an attempt to gain advantage in this litigation.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

26.     As detailed below, the Court makes this finding based on the fact that Plaintiffs' version is amply corroborated by contemporaneous documentary evidence. Moreover, Defendants are in no position to challenge the veracity of said documentary evidence because they were all prepared by the Defendants themselves before this action was filed.  The same documents also contradict the substance of Defendants' trial testimony.   Specifically:

a) In October 2006, Lip Yow transmitted to Diana Yu and Topway a document via e-mail, entitled "Action by Written Consent of the Board of Directors of The Ant Commandos, Inc.", for their review and signature.  This Written Consent, which was prepared at the Yow brothers' direction, authorizes and directs TAC to issue 40% of the company's shares to Topway in exchange for "Consideration *Paid*" of "$40,800.00 in *property* and past *services*", and 10% to Diana Yu in exchange for "Consideration *Paid*" of "$10,200 in *property* and past *services*."  Exh. 4 at p. 10 (emphasis added).  There is no mention therein of any obligation by Topway or Diana Yu to make monetary payments for their shares.

b) During approximately April and May 2006, Lip Yow told Diana Yu, in recorded MSN chat/instant messenger communications, that (1) "we will build a very strong team u [sic] and me"; (2) "I will prepare container for ANTS COMMNDON [sic] and approve you as 50% shareholder"; (3) "i will send over the information to you, include stock"; (4) "you are the mother of TAC"; and (5) "we all own TAC." Exh. 3 at pp. 8-13.

c) In a September 18, 2006 sworn declaration filed in the United States District Court for the Central District of California, in connection with the matter of  Activision Publishing, Inc., et. al. v. The Ant Commandos, Inc., et. al., No. EDCV 06-897, Hong Lip Yow

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

unqualifiedly declared that "Forty percent (40%) of the shares of The Ant Commandos *are* owned by Topway Electrical Appliance Co., Ltd" (emphasis added).  Exh. 17 at p. 6.

d)  In October 2006, Lip Yow transmitted to Diana Yu and Topway a document, entitled "Action by Unanimous Written Consent of Shareholders In Lieu of Annual Meeting of The Ant Commandos, Inc.", for their review and signature.  This Written Consent, which was prepared at the Yow brothers' direction, identifies Topway and Diana Yu as signatories in their capacity as 40% and 10% owners of TAC, respectively.   Exh. 3 at p. 32.

e)  In October 2006, Lip Yow transmitted to Diana Yu and Topway a document, entitled "Action by Written Consent of the Board of Directors of The Ant Commandos, Inc.", for their review and signature.  This Written Consent, which was prepared at the Yow brothers' direction, identifies Topway and Diana Yu as 40% and 10% owners of TAC, respectively.   Exh. 5 at pp. 1-2.

f)  TAC issued stock certificate no. 1 to Topway, dated March 20, 2006, for 204,000 shares, which constituted 40% of all TAC shares then outstanding.  *See* Exh. 22.

g)  TAC issued stock certificate no. 4 to Diana Yu, dated March 20, 2006, for 51,000 shares, which constituted 10% of all TAC shares then outstanding.  *See* Exh. 25.

h)  TAC issued stock certificate no. 5 to Topway, dated September 4, 2006, for 5,100,000 shares, which constituted 40% of all TAC shares then outstanding.  *See* Exh. 26.

i)  TAC issued stock certificate no. 8 to Diana Yu, dated September 4, 2006, for 1,275,000 shares, which constituted 10% of all TAC shares then outstanding.  *See* Exh. 29.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

j) TAC prepared a Stock Transfer Ledger which indicates that on March 20, 2006, Topway and Diana Yu were issued 40% and 10%, respectively, of all TAC shares then outstanding. *See* Exh. 30.

k) TAC prepared a Stock Transfer Ledger which indicates that on September 4, 2006, Topway and Diana Yu were issued 40% and 10%, respectively, of all TAC shares then outstanding. *See* Exh. 30.

l) In a letter dated March 2, 2007, attorney Michael Oswald, counsel for TAC, Raymond Yow and Lip Yow, responded to a shareholder inspection demand made by the law firm of Wang Hartman & Gibbs (the "Wang firm") on behalf of Topway and Diana Yu. In his letter, Mr. Oswald indicated that "access to TAC's records and information will not be permitted so long as the Wang firm represents either Topway or Ms. Yu", but no claim was made that Topway or Diana Yu were not shareholders of TAC or had failed to pay for their shares in TAC. *See* Exh. 13.

m) In a letter dated March 8, 2007, attorney Michael Oswald, counsel for TAC, Raymond Yow and Lip Yow, responded to a further shareholder inspection demand made by the Wang firm on behalf of Topway and Diana Yu. In his letter, Mr. Oswald indicated that "If another firm [other than the Wang firm] representing Topway contacts me, I will be happy to discuss arrangements in which their [inspection] requests can be handled", but no claim was made that Topway and Diana Yu were not shareholders of TAC or had failed to pay for their shares in TAC. *See* Exh. 15.

n) In January or February 2007, Hong Lip Yow and Raymond Yow presented Topway and Diana Yu with a Stock Purchase Agreement in an attempt by TAC to buy back their shares in the company. In this

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Stock Purchase Agreement, which was drafted at the Yow brothers' direction, they affirmed that Topway and Yu "are the legal and beneficial owners of an aggregate of 6,375,000 shares of Common Stock [of TAC] representing 50% of the total number of issued and outstanding shares".  Exh. 3 at p. 15.

o) Plaintiffs' contention that the $50,000 paid by the Yow brothers was really a loan to TAC is corroborated by a prior consistent statement Yu made during an April or May 2006 MSN chat/instant messenger communication with Lip Yow.  During that communication, Yu, upon leaning from Lip Yow that he had "put in 50,000 yesterday," characterized that transaction as "borrow [sic] you money" – which was her way of describing a loan made by the Yow brothers to TAC.  *See* Exh. 3 at p. 13; 3/18/08 Transcript, p. 102, line 8 to 18.

p) Defendants have failed to present any documentary evidence prepared before this litigation which support their claim that Topway and Yu agreed to make a $50,000 monetary payment for their 50% interest.

q) Defendants claim that, between September 2006 and March 2007, they made demands on Plaintiffs to pay for their shares on at least a monthly basis.  None of these purported demands were reduced to writing, and Defendants have not otherwise presented any pre-litigation documentary evidence to corroborate their contention that they made such demands.

**F.   Defendants Concede That They Agreed Plaintiffs Could Ship Goods As Consideration for 50% Ownership Interest**

27.   In his trial testimony, Lip Yow indicated that he strongly preferred, and thus initially demanded, that Topway make a monetary investment in consideration for shares in TAC.  However, Lip Yow later conceded that he ultimately acceded to Tan's request for Topway to make its capital investment in the form of a free

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

shipment of goods, rather than any monetary payment.   4/17/08 Transcript, p. 11, line 2 to 17.

28.     Lip Yow further testified that in or about May or June 2006, after he was unable to sell the free goods for what he believed was sufficient value, he went back to Tan and demanded that Topway make a monetary capital contribution in consideration for shares.  4/17/08 Transcript, p. 15, line 8 to 11.

29.     There is no evidence to corroborate Defendants' claim that Lip Yow approached Topway, Yu or Tan to make a second demand for monetary investment. This state of the evidence stands in sharp contrast to the substantial volume of contemporaneous, pre-litigation, documentary evidence prepared by the Defendants which support Plaintiffs' factual contentions in this case.  *See* Proposed Findings of Fact paragraphs 26(a)-(q), *supra*.  Accordingly, the Court finds that Lip Yow's allegation that Defendants made a second demand on Topway for monetary investment is fabricated and not credible.

30.     There is no evidence that Topway, Yu or Tan assented to the Defendants' second demand for monetary investment.

31.     There is no evidence that Defendants offered or gave Topway or Yu any new or additional consideration in exchange for their purported assent to the Defendants' second demand for monetary investment.

**G.     Defendants' Allegation That Plaintiffs Agreed to Make a Matching $50,000 Monetary Investment for Shares Is Riddled With Inconsistencies**

32.     A further reason why the Court rejects Defendants' trial testimony that Plaintiffs agreed to make a matching $50,000 monetary investment for their shares is because there are numerous inconsistencies in the Defendants' story.

33.     Specifically, Lip Yow testified at trial that the "total" consideration paid by him and Raymond Yow for their 50% shares was $50,000.  *See* 4/17/08 Transcript, p. 11, line 2 to 5; p. 17, line 5 to 6; p. 31, line 6 to 9.  However, in a sworn declaration

previously submitted in this action on Dec. 27, 2007, Lip Yow stated that in addition to a $50,000 monetary investment, he and his brother also contributed $52,000 in the form of salaries not taken, for a total of $102,000 in consideration for their shares. *See* Exh. 10 at p. 4; 4/17/08 Transcript, p. 31, line 12 to p. 32, line 20.

34.   Further, on March 20, 2006, TAC issued stock certificates to Lip Yow and Raymond Yow for a total of 255,000 shares combined.  *See* Exhs 23, 24. According to a March 20, 2006 Action by Written Consent of the Board of Directors of The Ant Commandos, Inc., the stated par value for TAC shares was $0.20 per share.  *See* Exh. 6 at p. 4.  Based on this par value, the Yow brothers paid a total of ***$51,000*** in consideration for their shares – ***not*** $50,000 ***or*** $102,000.

35.   Lip Yow testified that Plaintiffs strung him along by continually promising to make the $50,000 monetary investment, but they never followed through with the payment.   This led Lip Yow in January or February of 2007 to inform Plaintiffs that they could no longer become shareholders of TAC.  4/17/08 Transcript, p. 33, line 8 to 14.  However, in a prior declaration filed in this action on Dec. 27, 2007, Lip Yow stated that Plaintiffs had until March 2007 to pay for their TAC shares. *See* Exh. 10 at p. 15.  Further, in an even earlier declaration filed in this action on June 14, 2007, Lip Yow gave yet a third version of this story:  He stated that the Plaintiffs' opportunity to purchase TAC shares closed at the end of 2006.  *See* Exh. 100 at p. 2.

**H.   <u>Topway Fully or Substantially Performed On Its Promise To Make an Initial Shipment of Goods to TAC for Free</u>**

35.   As noted at Proposed Findings of Fact paragraph 23, *supra*, Defendants do not deny that Topway contributed – and TAC received – the initial shipment of goods which Topway contends it furnished in consideration for a 50% ownership interest.

36.   The Court heard Lip Yow testify that the quality and value of the products provided by Topway in this initial shipment were less than what he apparently expected and, accordingly, TAC was not able to sell as many of them, or

fetch as high of a price for them, as Defendants expected.  4/17/07 Transcript, p. 12, line 13 to p. 14, line 24.

37.    However, there is no evidence to corroborate Lip Yow's testimony on this issue:  There is no contemporaneous writing evidencing Defendants' dissatisfaction with the products; there is no documentary evidence that Defendants returned or tried to return the products to Topway; and none of the allegedly inferior products were brought to Court or admitted into evidence.  This state of the evidence stands in sharp contrast to the substantial volume of contemporaneous, pre-litigation, documentary evidence prepared by the Defendants which support Plaintiffs' factual contentions in this case.  *See* Proposed Findings of Fact paragraphs 26(a)-(q), *supra*. Accordingly, the Court finds that Lip Yow's allegation that Topway shipped inferior goods is fabricated and not credible.

38.    However, even if this testimony were believed, the Court does not find that it shows a failure of consideration, or that Plaintiffs failed to make substantial performance.  This is because the Defendants presented no evidence that the parties discussed – or much less agreed on – a specific value or quality for the goods that Topway must contribute.

39.    The Court heard testimony from the Defendants insinuating that Plaintiffs failed to perform because Topway had in fact charged and received payment from TAC for the initial shipment of goods.  In support of this argument, Defendants point to an accounting ledger prepared by Yu and transmitted to Lip Yow in early 2007 which appears to indicate that Topway applied payments it received from TAC to the initial shipment of goods.  *See*  Exh. 56 (hereinafter "the Accounting Ledger").

40.    On the other hand, the Court heard testimony from Yu, who explained that Topway issued invoices to TAC for the initial shipment of goods not because it intended to charge TAC for the goods, but only because this is required to clear customs.  3/18/08 Transcript, p. 29, line 7 to 23.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

41.   Yu, who prepared the Accounting Ledger, also testified that the it was not intended to reflect the application of payments to specific invoices or shipments of goods.  She explained that, rather than paying off the full amount of any invoice (or of groups of invoices) on a regular basis, it was TAC's practice to pay Topway in arbitrary whole-number dollars, and it did so in whatever amount it chose, whenever it chose.  Accordingly, the Accounting Ledger was meant only as a rough tool to keep track of Topway's overall accounts receivable position with respect to TAC.  3/18/08 Transcript, p. 87 line 10 to p. 88, line 5; p. 99, line 14 to p. 100, line 3.

42.   The Court accepts Yu's explanation of the purpose and meaning of the Accounting Ledger because it is corroborated by the fact that under the column therein entitled "Payment Status", it indicates that payment for the initial and other recorded shipments of goods was merely "RECEIVED", as opposed to "PAID".

43.   Further, the Court notes that, as the Accounting Ledger clearly shows, the total outstanding debt owed by TAC to Topway is $713,114.76.  This sum far exceeds the invoice value of the initial shipment of goods, which was approximately $29,000. Accordingly, as an economic matter, TAC has not paid Topway for the initial shipment of free goods.

44.   Moreover, the Defendants' own conduct belies their claim that the Accounting Ledger indicates TAC had paid for the initial shipment of free goods. After Lip Yow received a copy of the Accounting Ledger from Yu in early 2007, he nevertheless proceeded to have his lawyer draft the Stock Purchase Agreement (*see* Exh. 3 at pp. 15-22), in which Defendants affirmed that Topway and Yu were 50% owners of TAC and sought to buy back those shares.

45.   It was also after Lip Yow received a copy of the Accounting Ledger from Yu that he proceeded to authorize TAC to make at least another $200,000 payment to Topway.  *See* Exh. 38.  There is no evidence that Lip Yow did this under any reservation or protest.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. Plaintiffs' Alleged Sale to Best Buy of Guitar Gaming Consoles That Are Compatible with the "Guitar Hero" Game

46. The Court heard testimony from the Defendants that they purchased one "shredder" style, "Guitar Hero"-compatible gaming guitar from Best Buy in October/November 2006 (*see* Exh. 59A), and then another one sometime during 2008 (*see* Exh. 59B). Inside the bodies of these two guitars are plastic imprints bearing marks with the Topway name, address and website URL.

47. Defendants claim that these guitar sales are evidence that Topway materially breached the exclusive dealing/non-competition provisions in the parties' agreement for joint ownership in TAC. Defendants further claim that, prior to October/November 2006, they were not aware that Topway caused these sales to take place, and that such sales were done without their authorization.

48. Yu testified that, in or around the summer of 2006, Lip Yow told Topway that TAC would stop selling the shredder style guitars in the United States because they were not selling well. Accordingly, TAC returned all such guitars to Topway. Because TAC no longer wanted to sell the shredder guitars, Topway no longer had any use for the molds it had on hand for making said guitars; the molds would presumably cause the Topway name, address and website URL to be imprinted into the plastic bodies of the guitars. At that point, according to Yu, Topway advised Lip Yow that it would transfer its shredder guitar molds to another manufacturing company (one separately owned by Tan's brother), which could conceivably end up selling the product through American channels. Lip Yow voiced no objection to this. 3/18/08 Transcript, p. 52, line 1 to p. 53, line 16.

49. The Court rejects any claim by Defendants that Plaintiffs caused the Best Buy sales to be transacted without the Yow brothers' knowledge and authorization, or that these sales constitute a material breach of the exclusive dealing/non-competition provision in the parties' agreement for joint ownership of TAC. This is because there is no evidence to corroborate these claims. Specifically, there is not a single

contemporaneous writing evidencing Defendants' discovery of the Best Buy sales, or their objection thereto, even though the Defendants decry these sales as a profoundly dishonest act by the Plaintiffs that seriously damaged TAC's business.

50.   Moreover, the Defendants' own conduct belies their claims.  Specifically, even after the discovery of the Best Buy sales in October/November 2006, TAC continued doing substantial business with Topway, including paying some additional $800,000 to Topway.   4/17/08 Transcript, p. 55, line 18 to 23.

51.   Further, in early March of 2007, when TAC responded to Topway's and Yu's initial requests for shareholder inspections, it did not claim that the Best Buy sales had vitiated Plaintiffs' shareholder status, and nor did it object to the inspection on grounds that Plaintiffs were competing against TAC.  Rather, TAC's response was merely that it would gladly accommodate Plaintiffs' inspection so long as they retained new legal counsel.  *See* Exhs. 13 and 15.

52.   Accordingly, the Court finds that Defendants' claim that the Best Buy sales were transacted without their knowledge and authorization, or that the sales constituted a material breach of the exclusive dealing/non-competition provision in the parties' agreement for joint ownership of TAC, were recently fabricated in an effort to gain advantage in this litigation.

53.   Defendants presented no evidence that they have ever sought a rescission of the parties' agreement for joint ownership in TAC, or that they have ever offered to restore any consideration given by Topway or Yu pursuant thereto.

54.   The Defendants' Answer and Counterclaim contain no allegation that they have ever sought a rescission of the parties' agreement for joint ownership in TAC, or that they have ever offered to restore any consideration given by Topway or Yu pursuant thereto.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

## J.  **Directors of TAC**

55.    TAC's bylaws provide that its directors shall hold office until the expiration of the term for which they were elected and until a successor has been elected and qualified.

56.    Defendants concede that, up until her purported removal on or about June 25, 2007, Diana Yu was a director of TAC.

57.    There is no evidence that a successor to Yu on the board has been elected or qualified.

58.    Neither Yu nor Topway learned of Yu's purported removal from TAC's board until August 17, 2007, when TAC's counsel advised Plaintiffs' counsel thereof. *See* Exh. 17 at p. 2.

59.    There is no evidence that Diana Yu has a criminal record or is of unsound mind, and there is no evidence that Raymond Yow or Lip Yow filed a shareholder derivative action to remove Diana Yu from the TAC board

60.    Defendants contend that they never agreed to make Tan a director of TAC, and any writings made or actions taken which tend to show otherwise was an inadvertent mistake.

61.    The Court finds Defendants' denial of Tan's seat on the TAC board is fabricated and lacking in credibility.  This is because, before this litigation was filed, TAC, Raymond Yow and Lip Yow made numerous admissions in which they acknowledged that Tan was a director of TAC.  These admissions include the following:

(a) In October 2006, Lip Yow transmitted to Diana Yu and Topway a document, entitled "Action by Unanimous Written Consent of Shareholders In Lieu of Annual Meeting of The Ant Commandos, Inc.", for their review and signature.  This Written Consent, which was prepared at the Yow brothers' direction, indicates that the

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

shareholders appointed Steven Tan to TAC's Board.  *See* Exh. 3 at p. 30.

(b) TAC prepared the minutes of its Board meeting of September 7, 2006. These minutes, which are dated September 10, 2006, indicate that Steven Tan, as well as Diana Yu and Lip Yow, were in attendance at the Board meeting described therein, and Steven Tan is specifically identified therein as one of the "undersigned Directors" of TAC.  *See* Exh. 3 at p. 26.

(c) In October 2006, Lip Yow transmitted to Diana Yu and Topway a document, entitled "Action by Unanimous Written Consent of the Board of Directors of The Ant Commandos, Inc.", for their review and signature.  This Written Consent, which was prepared at the Yow brothers' direction, identifies Steven Tan, as well as Diana Yu, as signatories in their capacity as directors of TAC.  *See* Exh. 5 at p. 3.

(d) On or about October 3, 2006, TAC prepared and filed a Statement of Information with the State of California Secretary of State which identifies Steven Tan, along with Diana Yu, Lip Yow and Raymond Yow, as directors of TAC.  *See* Exh. 53 at pp. 1-2.

62.    There is no evidence that TAC's shareholders or directors took any action to remove Tan from TAC's Board.

## II.    <u>CONCLUSIONS OF LAW</u>

### A.    <u>The Parties Entered Into An Enforceable Contract Whereby Topway and Yu Were Made 50% Owners of TAC Upon Topway's Initial Shipment of Goods to TAC</u>

1.    The parties do not dispute that they entered into an enforceable, contractual agreement for allocating 50% of TAC's shares to Raymond and Lip Yow and the other 50% to Topway and Diana Yu.  Rather, the parties' dispute centers

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

around what were the terms or consideration actually agreed upon for the 50/50 allocation, and whether Topway and Diana Yu fully performed thereunder.

2.     For the reasons stated at Proposed Findings of Fact paragraphs 25-31, *supra*, the Court concludes that the parties agreed that Topway and Yu would become 50% owners of TAC upon Topway's initial shipment of free goods to TAC.

3.     For the reasons stated at Proposed Findings of Fact paragraphs 32-35, *supra*, the Court concludes that the Defendants' story that each side had agreed to pay a monetary investment of $50,000 for ownership of TAC was fabricated to gain advantage in this litigation, and it is thereby rejected as lacking in credibility.

4.     Defendants contend that, because Topway's initial shipment contained what they felt were inferior goods, they approached Topway and renewed their demand that it make a monetary investment as consideration for TAC shares.  This appears to be an effort by the Defendants to modify the parties' agreement.  However, the law is clear that an oral modification of an oral contract is valid and enforceable only if there is mutual assent, coupled with additional or new consideration for the modification.  *See Wade v. Diamond A Cattle Co.*, 44 Cal. App. 3d 453, 457 (1975); *Healy v. Brewster*, 251 Cal. App. 2d 541, 551 (1967).

5.     In this case, there is no evidence that Plaintiffs assented to Defendants' renewed demand for a monetary investment.  Further, even if Plaintiffs gave such assent, there is no evidence that Defendants gave any new or additional consideration therefor.  Accordingly, the Court concludes that Plaintiffs' obligation to provide goods for shares was never modified into an obligation to pay a monetary sum.

### B.     Plaintiffs Fully or Substantially Performed Their Obligations Under the Parties' Agreement

6.     Defendants do not dispute the fact that Topway did make an initial shipment of goods in consideration for a 50% interest in TAC.  However, Defendants allege that the value or quality of said goods were substantially lower than what they had expected.

7. However, even if this allegation was true, it does not constitute a failure to perform or a failure of consideration on the Plaintiffs' part. This is because the evidence does not indicate that the parties ever discussed or agreed upon a specific level of quality or value for Topway's initial shipment of goods.

8. Moreover, there is no legal basis to challenge the sufficiency of the consideration Topway gave for the shares. Under governing California law, any consideration at all can be deemed sufficient consideration for corporate shares. *See, e.g., California Trona Co. v. Wilkinson*, 20 Cal. App. 694, 703 (1912) ("If there is a consideration of some sort . . . that is intended to redound to the benefit of the corporation . . . then . . . the consideration is sufficient and . . . adequate, although it may not be equal in value to that of the stock").

9. Defendants also contend that Plaintiffs failed to perform because Topway actually billed and received payment from TAC for the initial shipment of "free" goods. However, for the reasons stated at Proposed Findings of Fact paragraphs 39-45, *supra*, the Court concludes that TAC did not pay for the initial shipment of goods, and Defendants' contentions to the contrary were fabricated to try to gain advantage in this litigation.

10. Accordingly, the Court concludes that Plaintiffs fully or substantially performed their obligation to make an initial shipment of free goods to TAC in consideration for a 50% ownership interest.

**C.** **Contemporaneous, Documentary Evidence Prepared by the Defendants Themselves Before Litigation Ensued Conclusively Establishes Topway's and Yu's Shareholder Status**

11. As noted at Proposed Findings of Fact paragraphs 26(a)-(q), *supra*, some of the most powerful evidence in support of Plaintiffs' claim of shareholder status comes from contemporaneous documents prepared by the Defendants themselves before this litigation ensued. In these documents, the Defendants repeatedly and unambiguously acknowledge the shareholder status of Topway and Yu.

12.     With respect to certain of these documents – for example, the corporate director and shareholder written consents in Exhs. 3 at pp. 30-32; Exh. 4 at pp. 6-10; and Exh. 5 at pp. 1-3 -- Defendants argue that they are of limited or no legal effect because Yu and Tan did not sign them as TAC had requested.  However, this confuses the issue of whether the corporate actions envisioned in the various shareholder or director written consents were validly approved, with whether the statements made therein attesting to Plaintiffs' shareholder status amount to Defendants' admission of fact.  The documents at issue are certainly relevant and admissible for purposes of addressing the latter inquiry.  *See Kendal v. San Pedro Lumber Co.*, 98 Cal. App. 2d 242, 244 (1929) (although documents prepared by debtor did not rise to the level of an account stated they nonetheless constituted admissions as to the presence of a debt); Fed. R. Evid. 801(d)(2) (admission/statement of party opponent); Fed. R. Evid. 804(b)(3) (statement against interest).

13.     The Stock Purchase Agreement (*see* Exh. 3 at pp. 15-22) that was tendered by the Yow brothers is particularly damaging to the Defendants' case.  An attempt to buy out Plaintiffs' TAC shares cannot be reconciled with the contention that Topway and Yu are not owners of the company.  In this regard, the Defendants contend that the Stock Purchase Agreement was really an offer to compromise under Fed. R. Evid. 408, and therefore it should not be admitted or accorded weight.  However, such a contention is without merit.  Not only is the Stock Purchase Agreement without any of the recognizable features of an offer to compromise, it affirmatively acknowledges and warrants Topway's and Yu's rightful shareholder status.  *See, e.g., Civic Center Drive Apartments Ltd. Partnership v. Southwestern Bell Video Services*, 295 F.Supp.2d 1091, 1099 n. 3 (N.D. Cal. 2003) (where there was "no reference to settlement negotiations" in schedule of proposed corrective work given by construction company to customer during their dispute, the document was deemed to be outside the scope of Fed. R. Evid. 408); *City of Honolulu v. Rivera Davila*, 438 F.2d 1367, 1369 (1st Cir. 1971) (offer wherein alleged debt guarantor requested only

an extension of time and agreed to make full payment was "properly viewed . . . as an admission rather than an offer in compromise").

###    D.    Actual Delivery of Share Certificates Is Not Necessary to Establish Plaintiffs' Valid Ownership Interest

14.    If, as the Court concluded in the foregoing pages, the parties entered into a binding agreement for the allocation of TAC shares, and Plaintiffs has fully or substantially performed their obligations thereunder, then the agreement is fully executed and Plaintiffs are immediately and automatically vested with the ownership interest as a matter of law.  *See, e.g., Reeder v. Finderup*, 78 Cal. App. 305, 308 (1926); *Mitchell v. Beckman*, 64 Cal. 117, 121 (1883).

15.    Defendants contend that Plaintiffs were never lawful shareholders of TAC because they never received TAC share certificates.  However, the law is clear that when an agreement for the distribution or sale of shares is fully executed, actual delivery of the share certificates is not necessary to create ownership interest in its intended holder.  *See, e.g., United States Nat'l Bank of Los Angeles v. Stiler*, 216 Cal. 324, 333-34 (1932); *Western Pacific Paper Co. v. Hollywood Tropics*, 113 Cal. App. 305, 308 (1931).

###    E.    Plaintiffs' Alleged Sales of Guitars to Best Buy Do Not Vitiate Their Shareholder Status

16.    For the reasons stated at Proposed Findings of Fact paragraph 49-54, *supra*, this Court does not give credence to Defendants' claim that Plaintiffs caused the guitars depicted in Exhs. 59A and 59B to be sold to Best Buy without Defendants' knowledge and authorization.  The Court also rejects Defendants' contention that such sales, if they occurred at all, were viewed as a material breach of the exclusive dealing/non-competition provision in the parties' agreement for joint ownership of TAC.  Chief among the reasons for the Court's conclusion is the utter lack of contemporaneous evidence showing Defendants' objection to the Best Buy guitar sales.  *See, e.g., Bohman v. Berg*, 54 Cal. 2d 787, 795 (1960) ("When one party

performs under the contract and the other party accepts his performance without objection it is assumed that this was the performance contemplated by the agreement").

17.    The sale of the guitar depicted in Exh. 59B  cannot, as a matter of law, serve as the basis for any breach of contract allegation against the Plaintiffs.  That sale occurred during 2008, at which time Plaintiffs were already relieved from any obligation to honor the parties' agreement because it came well after Plaintiffs filed this suit on April 20, 2007 in response to Defendants' failure to honor the Plaintiffs' shareholder rights.  *See, e.g., Harlan v. Harlan*, 74 Cal. App. 555, 561-62 (1946) ("Defendant may not deprive plaintiff of the sole consideration for her promises and at the same time hold her to those promises").[1]

18.    As for the sale of the guitar depicted in Exh. 59A under the circumstances of this case that can in no way vitiate Plaintiffs' shareholder status.  The parties' agreement for the joint ownership of TAC is bilateral in nature expect in one respect:  Before it gains a 50% interest, Topway must first make the initial shipment of free goods.  *See, e.g.,  Davis v. Jacoby*, 1 C. 2d 370, 378 (1934) (a bilateral contract is one in which there are mutual promises, a promise being given in consideration of another promise).  Once that shipment is made, however, the contract is fully executed and Plaintiffs are immediately and automatically vested with the ownership interest as a matter of law.  *See, e.g., Reeder v. Finderup*, 78 Cal. App. 305, 308 (1926); *Mitchell v. Beckman*, 64 Cal. 117, 121 (1883).

19.    Here, an alleged violation of the exclusive dealing/non-competition provision that took place in October/November 2006 in no way negates the fact that the agreement making Plaintiffs' 50% shareholders was already fully executed back in April 2006, when the shipment of goods was made.

---

[1] For the same reason, Exhibit 58 is irrelevant.  That purports to be an agreement, entered into on May 15, 2007, whereby Topway (through Tan) conferred exclusive distributorship rights upon Griffin International Companies for the sale of guitar gaming consoles manufactured by Topway.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

20.     Thus, the sale of the guitar depicted in Exh. 59A to Best Buy can serve only as the basis for a breach of contract claim against the Plaintiffs.  To the extent Defendants may seek damages for such breach, that is not a subject of this trial and it will not affect Plaintiffs' shareholder status.  To the extent Defendants may try to vitiate Plaintiffs' shareholder status by seeking a rescission remedy for said breach, it is not a legally viable option here.  This is because the law requires that, to attain rescission, it must be promptly announced by the promisee and consideration offered to be restored.  *See, e.g., Brunzell Const. Co. v. G.J. Weisbrod, Inc.*, 134 Cal. App. 2d 278, 283 (1955).  In this case, there is no evidence that Defendants have ever demanded rescission, or offered to restore consideration.  Further, Defendants' Answer and Counterclaim also do not plead any of these requisite preconditions for rescission.

21.     Under the circumstances of this case, even if Defendants' allegation is to be believed that Plaintiffs caused competing guitar consoles to be sold at Best Buy, it does not provide any legal basis to strip Topway or Yu of their ownership interest in TAC.

### F.     Tan Was Appointed and Remains a TAC Director

22.     It is controverted whether the parties agreed, as part of the formation of TAC, to install Tan, along with Yu and the Yow brothers, on the TAC Board.  However, the Court need not resolve this factual conflict in order to conclude that Tan was duly appointed to the Board.  The Court bases its conclusion on the October 2006 "Action by Unanimous Written Consent of Shareholders In Lieu of Annual Meeting of The Ant Commandos, Inc.", which indicates that shareholders appointed Tan to the board, effective immediately, until the next annual meeting of shareholders and until his successor is elected. *See* Exh. 7 at p. 1.  There is no evidence that a successor to Tan's board seat has been elected.

23.     Although the aforesaid shareholder written consent was not fully executed by TAC's shareholders, the law is clear that, in close corporations like TAC,

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

the law favors substance over form such that corporate actions can be deemed valid even if they were not formally enacted – especially if the action in question was later ratified by word or conduct.  *See, e.g., Brainard v. De La Montanya*, 18 Cal. 2d 502, 511 (1941) (in cases of close corporations where the directors are in frequent contact with each other, it is unnecessary to hold formal meetings in order to reach decisions); *In re Ostwald's Estate*, 189 N.Y.S.2d 472, 480 (1959) (directors of small corporations may transact their business by conversation and without formal votes); *American Center for Education, Inc. v. Cavnar*,  80 Cal. App. 3d 476, 490 -491 (1978) ("The law favors substance over form. ( *Civ. Code*, § 3528)"); *Teperman v. Atcose Baths, Inc.* 182 N.Y.S.2d 765, 768 (1959) (an action taken at an incorporator's meeting was held to be effective even though the minutes of the meeting were not signed); *McCarthy v. U.S.I. Corp.*, 678 A. 2d 48, 52 (1996) (an unsigned unanimous shareholder consent terminating certain employees was later validated by ratification and therefore was held to be valid nunc pro tunc).

24.     Here, there is substantial evidence that TAC ratified Tan's appointment to the board:

(a) TAC prepared the minutes of its Board meeting of September 7, 2006. These minutes, which are dated September 10, 2006, indicate that Steven Tan, as well as Diana Yu and Lip Yow, were in attendance at the Board meeting described therein, and Steven Tan is specifically identified therein as one of the "undersigned Directors" of TAC.  *See* Exh. 21 at p. 1.

(b) In October 2006, Lip Yow transmitted to Diana Yu and Topway a document, entitled "Action by Unanimous Written Consent of the Board of Directors of The Ant Commandos, Inc.", for their review and signature.  This Written Consent, which was prepared at the Yow brothers' direction, identifies Steven Tan, as well as Diana Yu, as signatories in their capacity as directors of TAC.  *See* Exh. 8 at p. 3.

(c) On or about October 3, 2006, TAC prepared and filed a Statement of Information with the State of California Secretary of State which identifies Steven Tan, along with Diana Yu, Lip Yow and Raymond Yow, as directors of TAC. *See* Exh. 53 at pp. 1-2.

**G.    The Ninth Cause of Action**

25.    Plaintiffs' Ninth Cause of Action challenges the validity of TAC's June 25, 2007 Action, whereby Raymond Yow and Lip Yow voted to purportedly remove Diana Yu from TAC's board.

26.    Under governing California law, a director of a California corporation may be removed only as prescribed in *Cal. Corp. Code* §§ 302, 303 or 304. *See Cal. Corp. Code* § 303(c); DeGarmo v. Goldman, 19 Cal. 2d 755, 760 (1942).

27.    In this case, because there is no evidence that Diana Yu has a criminal record or is of unsound mind (*Cal. Corp. Code* § 302), and there is no evidence that Raymond or Lip Yow filed a shareholder derivative action to remove Diana Yu from the board (*Cal. Corp. Code* § 304), Yu's removal from the Board is valid only if Topway and Diana Yu are not shareholders of TAC. If they are shareholders, however, then Yu's removal is invalid because there is no evidence that Topway or Diana Yu received timely notice of the June 25, 2007 Action. *See Cal. Corp. Code* §§ 303, 603(a), 603(b).

28.    For all of the foregoing reasons, the Court concludes that Yu and Topway are combined 50% shareholders of TAC and, accordingly, finds in favor of Plaintiffs as to the Ninth Cause of Action. Specifically, the Court finds that (a) the June 25, 2007 Written Action removing Yu from the Board is illegal and fraudulent because Yu and Topway, as TAC shareholders, was not given any notice of the vote, and therefore was not given an opportunity to cast their vote thereon; and (b) that Yu shall therefore be immediately reinstated as a director of TAC.

**H.    The Tenth Cause of Action**

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

29.    For all of the foregoing reasons, the Court concludes that Yu and Topway are combined 50% shareholders of TAC and, accordingly, finds in favor of Plaintiffs as to the Tenth Cause of Action.  Specifically, the Court declares, and grants injunctive relief reasonably necessary to effectuate, the following:  (a) Yu and Topway are 50% shareholders of TAC; (b) Yu is a director of TAC; (c) Tan is a director of TAC; and (d) any votes terminating Yu and/or Tan as directors (including the June 25, 2007 Written Action) which was taken by shareholders that did not include Topway and Yu is illegal, null and void.[2]

APPROVED AND ADOPTED BY THE COURT,

Dated:  November 06, 2008

*[signature]*

STEPHEN LARSON
United States District Judge

_____

[2] As a logical and necessary consequence of the foregoing, the Court also declares, and grants injunctive relief reasonably necessary to effectuate, the following: That the Amendment to Bylaws reflected in Exhibits 31 and 32, dated August 14, 2007, whereby Raymond Yow and Lip Yow, voting as the "sole shareholders" of TAC, reduced the number of directors to two, is null and void.  The TAC bylaws provide that the bylaws may be amended by shareholders only if approved by at least a majority of the outstanding shares entitled to vote in the election of directors at any annual or special meeting of shareholders.  *See* Exh. 20 at p. 6.  Neither Yu nor Topway, as shareholders, received notice of this vote or had an opportunity to participate therein.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW